**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 23-cr-341 (RBW)** |
| | **:** | |
| **ANNA LICHNOWSKI,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## <u>UNITED STATES' OMNIBUS MOTIONS *IN LIMINE*</u>

The United States respectfully submits this omnibus brief arguing motions *in limine* in advance of the trial in this case scheduled for July 8, 2024. "Motions in limine are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011)). The government offers the authorities and analysis below to promote efficiency and reduce the need to argue objections mid-trial. The parties nonetheless intend to meet and confer on all issues, to include possible stipulations, agreements, concessions, etc., to ensure a streamlined presentation. For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

# TABLE OF CONTENTS

I.    Factual Background ...................................................................................................... 3

II.   Motion *in Limine* to Admit Video Montage Evidence .................................................. 5

III.  Motions *in Limine* to Limit Unnecessary Discussion of Security-Related Topics ....... 6

  A.  Exact Locations of USCP Cameras ........................................................................... 8

  B.  Secret Service Protocols ............................................................................................ 8

IV.   Motion *in Limine* to Preclude Improper Defense Arguments .................................... 10

  A.  First Amendment ...................................................................................................... 10

    1.    Admission of Defendant's Statements Does Not Violate the First Amendment ............ 10

    2.    Defendant Should be Precluded from Raising a First Amendment Defense .................. 11

  B.  Charging Decisions and Selective Prosecution ....................................................... 12

  C.  Entrapment or Public Authority Defenses ............................................................... 13

I.        **Factual Background**

This recitation of facts is intended to summarize, but not necessarily include all of, the government's evidence.

On January 6, 2021, a riot at the U.S. Capitol interrupted the certification of the 2020 presidential election. The defendant in this case, Anna Lichnowski, participated in that riot. On January 5, 2021, she travelled from her home in New Jersey to the District of Columbia, and on January 6, she attended the rally at the Ellipse in support of then-President Donald Trump. She wore a red beanie hat, an American Flag-print scarf, and a grey sweatshirt, as pictured below.



After attending the rally, the defendant traveled to the U.S. Capitol and entered the restricted area by the northeast side of the building at approximately 2:41 p.m. At approximately 2:53 p.m. on January 6, 2021, the defendant unlawfully entered the Capitol building through the Senate Wing Door while a blaring alarm sounded.



As she entered the door, the defendant raised a cellphone over her head several times and appeared to take photos or record videos of the crowd already inside the building. She lingered in the area around the Senate Wing Doors for several minutes, and at one point approached a line of U.S. Capitol Police officers in riot gear. She then proceeded to walk further into the Capitol building.

From there, the defendant entered the Crypt of the U.S. Capitol where she remained for nearly 30 minutes until a law enforcement officer approached her and instructed her to leave. The defendant did not immediately comply, but eventually exited the building through the Memorial Doors at approximately 3:32 p.m., having been inside the building for nearly 40 minutes. Despite the alarm, the police presence by the Senate Wing Door, and interacting with a police officer in the Crypt, the defendant did not leave the restricted area around the U.S. Capitol. After exiting the building, the defendant remained within the restricted area on the East Plaza of the U.S. Capitol for almost 45 minutes.

In the days before and after January 6, the defendant used Facebook to send posts and messages evidencing her intent, knowledge, and state of mind on that day. Those included the following messages, among others:

**December 17, 2020**: "aw, you probably believe there's no voter fraud occurring either"

**January 3, 2021:** "I'm going to DC the 5th and 6th!!!"

**January 7, 2021:** "this was all a strategic distraction to take the public eye off the priority – the fact that our elections were not free and fair"

**January 16, 2024:** "ANTIFA and BLM were responsible for violence and riots. They instigated and riled up some Trump supporters who were dumb enough to play into their manipulation, yes, and those people were arrested and are paying their dues, unlike the scumbags who really did this. But the riot was PLANNED and executed by ANTIFA and BLM, not Trumpsters."

For her part in the riot, the defendant is charged in a four-count Information with violating 18 U.S.C. § 1752(a)(1) (entering or remaining in a restricted building or grounds) (Count One), 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds) (Count Two), 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol Building) (Count Three), and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol Building) (Count Four). Trial is scheduled to begin on July 8, 2024.

## II.    Motion *in Limine* to Admit Video Montage Evidence

The government moves for an order *in limine* to admit Government Exhibit 401, a fifteen-and-a-half-minute video montage of the January 6, 2021 riot at the United States Capitol, pursuant to Fed. R. Evid. 401, 402, 901, and 1006.

The government intends to introduce the exhibit through a U.S. Capitol Police Officer familiar with the Capitol Police procedures leading up to January 6, 2021, including the security measures put in place and the video surveillance system underpinning that security. The officer is also familiar with the approximately 1600 cameras present at the U.S. Capitol building and grounds. From the videos created by those cameras on January 6, 2021, the government has developed Government Exhibit 401, a comprehensive video montage, covering the events of the day.

Upon information and belief, the government has used this montage—in one way or another—in virtually every January 6 prosecution that has gone to trial, including trials before this Court. *See, e.g., United States v. Donnie Wren and Thomas Smith,* 21-CR-599-RBW (Doc. 122, Government Exhibit List) (Exhibit 102.1); *United States v. William Dunfee,* 23-CR-036-RBW (Doc. 65,

Government Exhibit List) (Exhibit 009). While this fact alone does not guarantee its admission, it highlights the probative value (and lack of prejudice) of an exhibit portraying the overall events at the U.S. Capitol on January 6. As such, the government seeks its admission here.

The montage is directly relevant to, and highly probative of, essential elements in Counts One, Two, Three, and Four of the Information. For example, the exhibit demonstrates how thousands of rioters, including the defendant, disrupted official government functions by storming the U.S. Capitol on January 6. It also contextualizes the defendant's actions among the larger mob, depicting the disorder and how law enforcement struggled to restore order given the sheer number of rioters, even if some rioters were non-violent.

Because Government Exhibit 401 is highly probative of the events on January 6, and the government meets its threshold burden of authentication, the Court should admit it.

### III.     Motions *in Limine* to Limit Unnecessary Discussion of Security-Related Topics

Certain topics that could arise at trial—namely the exact locations of USCP CCTV cameras and the protocols of the U.S. Secret Service ("USSS")—have little to no probative value but would compromise significant security interests if needlessly disclosed to the public. The government does not intend to elicit any of the following topics in its case-in-chief and, therefore, cross-examination on such topics would be beyond the scope of direct and impermissible. Fed. R. Evid. 611(b). To the extent that defendants seek to argue that any of the following topics are relevant and within the scope of the government's examination, the government requests an order under Fed. R. Evid. 403 foreclosing unnecessary cross-examination on these topics.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States*, 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609,

615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See, e.g.*, *United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).

The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief).

Preventing the defendants from exploring the topics identified below will not infringe their Confrontation Clause right because the exact positions of cameras, the camera map, and U.S. Secret Service protocols, implicate national security concerns, are of marginal probative value, and any probative value can be addressed without compromising the protective functions of government agencies.

### A.  Exact Locations of USCP Cameras

The government seeks an order limiting the defense from probing, during cross-examination, the exact locations of Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial. The government produced such information to defendants in discovery pursuant to the Highly Sensitive designation of the Protective Order. The defendant has been able to make use of such information to identify evidence and prepare for trial; however, none of the information serves to illuminate any fact of consequence that is before this Court. This lack of relevance must be balanced against the national security implications at stake here.

The U.S. Capitol Police's surveillance system serves an important and ongoing function in protecting Congress, and therefore, national security. Furthermore, the maps that show the physical location of cameras have been designated as "Security Information" under 2 U.S.C. § 1979, which generally requires approval of the Capitol Police Board before they may be released. Here, the video footage itself reveals the *general* location and angle of the camera's positioning. Additional details as to the precise location of the cameras are not relevant to the facts of this case. Even assuming the evidence that the government seeks to exclude is marginally relevant, such relevance is substantially outweighed by the danger to national security.

### B.  Secret Service Protocols

To prove Counts 1 and 2 and establish violations of 18 U.S.C. § 1752(a)(1) and (2), the government must prove that the Capitol and its grounds were "restricted" because the Vice President and his family were present there and being protected by the Secret Service. *See* 18 U.S.C. § 1752(c)(1)(B) (defining restricted buildings and grounds). To meet its burden of proof at trial, the government intends to offer testimony that, on January 6, 2021, Secret Service agents were at the Capitol to protect then-Vice President Mike Pence and two members of his immediate family. A Secret Service witness is further expected to explain how the riot at the Capitol on January 6 affected

the Secret Service's ability to protect Vice President Pence and his family. This proffered testimony will explain the bases for enhanced security controls at the Capitol on January 6, an essential element of Count One, as well as establish how the riot disrupted official government functions, an essential element of Count Two.

The very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the federally protected function performed by the Secret Service as testified to on direct exam, namely, protecting the Vice President and his family. The government further requests that such order preclude cross-examination that would elicit information that does not directly relate to whether the Secret Service was performing that function at the Capitol on January 6, 2021. Specifically, cross-examination should not be permitted to extend to (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

These topics have no relevance to any issue at controversy, and even if they did, any relevance would be substantially outweighed by the danger of prejudicing the government's legitimate interest in the safety of senior government officials. *See* Fed. R. Evid. 403. In other words, improper cross-examination of the Secret Service witness could reveal sensitive information and compromise national security without adding any appreciable benefit to the determination of the defendant's guilt or innocence, or the veracity or bias of witnesses. For this reason, courts in this district have routinely granted similar motions limiting the cross-examination of Secret Service witnesses in January 6 trials, including this Court. *See, e.g., United States v. Donnie Wren and Thomas Smith*, 21-CR-599-RBW

(04/07/2023 Minute Entry, granting Doc. 53, Government's Motion in Limine Regarding Cross-Examination of U.S. Secret Service Witness).

## IV.     Motion *in Limine* to Preclude Improper Defense Arguments

This motion *in limine* addresses potential impermissible defenses that have arisen in other January 6 trials and should be precluded here.[1]

### A.  First Amendment

The United States moves this Court to admit in its case-in-chief statements that evince the defendant's motive or intent, or which go to prove an element of any offense with which she is charged. The government also moves *in limine* to preclude the defense from eliciting evidence or arguing that her statements and actions were protected by the First Amendment.

#### 1.  Admission of Defendant's Statements Does Not Violate the First Amendment

The government may seek to introduce several statements, made by the defendant, that will aid the factfinder's determination as to whether the government has met the elements to show intent. *See Mitchell*, 508 U.S. at 489 (the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id*. Accordingly, the government asks that the Court rule that the First Amendment does not bar admission at trial of any statement that the government offers to establish the defendant's intent or an element of the crime.

---

[1] Courts in this district have routinely granted similar motions precluding impermissible defense arguments in January 6 trials, including this Court. *See, e.g., United States v. Richard Cook*, 23-CR-138-RBW (05/03/2024 Minute Entry, granting Doc. 185, United States' Motion in Limine to Preclude Improper Defense Arguments).

Courts across the country, including this Court, have allowed evidence of defendant's statements for the purposes sanctioned by *Mitchell*. As Judge Cooper ruled in a different January 6 prosecution:

> Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent. . . . If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 588 F. Supp. 3d 114, 124 (D.D.C. 2022) (internal citation omitted). Outside of the context of January 6th, *Mitchell* has been cited to uphold the admission of a wide range of statements, including but not limited to rap lyrics, terrorist materials, and speeches advocating civil disobedience. *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (rap lyrics); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (rap lyrics and tattoos); *United States v. Salameh*, 152 F.3d 88, 111-12 (2d Cir. 1998) (terrorist materials); *United States v. Fullmer*, 584 F.3d 132, 158 (9th Cir. 2009) (speeches advocating civil disobedience).

## 2. Defendant Should be Precluded from Raising a First Amendment Defense

The government also moves *in limine* to preclude the defendant from arguing that her conduct was protected by the First Amendment. None of the offenses with which the defendant is charged punish speech, as crimes such as threats or solicitation do. "No matter [the rioter's] political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment." *United States v. Nordean*, 579 F. Supp. 3d 28, 53 (D.D.C. 2021).

If the government establishes the elements of any of the offenses with which the defendant is charged, the First Amendment provides her no defense, even if evidence of the defendant's crimes is intertwined with political discussion or rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the

defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it"); *see also United States v. Hassan*, 742 F.3d 104, 127-28 (4th Cir. 2014) (citing *Amawi*).

Accordingly, any line of cross-examination or argument that the defendant may wish to make regarding the First Amendment is irrelevant under Fed. R. Evid. 401 because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and because she is not entitled to a First Amendment defense as a matter of law. To the extent there is any relevance to the defendant's First Amendment claims, the Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403. Any attempt to shift attention to questions about whether the defendant's statements were protected by the First Amendment, rather than the charged offenses risks confusing the issues, wasting time, and being unfairly prejudicial.

### B. Charging Decisions and Selective Prosecution

The United States moves *in limine* to exclude all evidence and arguments regarding its charging decisions. The Supreme Court has recognized that the "Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Wayte v. United States*, 470 U.S. 596, 607 (1985)). "They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *Armstrong*, 517 U.S. at 464 (citing U.S. Const. Art. II, § 3); *see* 28 U.S.C. §§ 516, 547. As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also United*

*States v. Batchelder*, 442 U.S. 114, 124-25 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.").

The defendant should be precluded from introducing evidence or making arguments regarding charging decisions made by the United States. To the extent that the defendant seeks to present evidence or arguments that other individuals have not been charged for related conduct or that it is unfair that she has been charged, while other individuals involved in related criminal conduct remain uncharged or charged with lesser offenses, such evidence only serves to divert attention to matters unrelated to the defendant's guilt or innocence.

### C.  Entrapment or Public Authority Defenses

The defendant should be prohibited from making arguments or attempting to introduce evidence that (i) the former president authorized her actions or (ii) law enforcement gave her permission to enter the U.S. Capitol. The defense of entrapment by estoppel only "applies to a defendant who reasonably relies on the assurance of a government official that specified conduct will not violate the law." *United States v. Alvarado*, 808 F.3d 474, 484–85 (11th Cir. 2015). Such reliance must be "objectively reasonable." *United States v. Barker*, 546 F.2d 940, 948 (D.C. Cir. 1976). This defense is unavailable in this case, for procedural as well as substantive reasons.

Federal Rule of Criminal Procedure 12.3(a)(1) requires the defendant to provide notice if he "intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense." Such notice must be in writing and be filed with the clerk "within the time provided for filing a pretrial motion, or at any later time the court sets." Fed. R. Crim. P. 12.3(a)(1). The notice must contain the law enforcement or federal intelligence agency involved, the specific agency member, and the time during which the defendant claims to have acted with public authority. Fed. R. Crim. P. 12.3(a)(2)(A)-(C). A failure to comply allows the court to exclude the testimony of any undisclosed witness except the

defendant. Fed. R. Crim. P. 12.3(c). As of the date of this filing, the defendant in this case has not

served notice pursuant to Rule 12.3(a)(1).

Nonetheless, the defendant should be precluded from advancing a public authority defense.

As an initial matter, former President Trump did not have the authority lawfully sanction the attack

on the United States Capitol on January 6 or any of the other criminal conduct allegedly perpetrated

by the defendant. As Judge Howell wrote in rejecting the idea of an entrapment-by-estoppel defense

for January 6 defendants:

> [A President] cannot, in keeping with his constitutional function and his
> responsibilities under Article II, lawfully permit actions that directly undermine the
> Constitution. Thus, a President cannot, within the confines of his constitutional
> authority, prevent the constitutionally mandated certification of the results of a
> Presidential Election or encourage others to do so on his behalf, nor can he direct an
> assault on the coequal Legislative branch of government. Were a President to attempt
> to condone such conduct, he would act *ultra vires* and thus without the force of his
> constitutional authority. . . . Put simply, even if former President Trump in fact
> [explicitly directed the rioters' actions,] his statements would not immunize
> defendants charged with offenses arising from the January 6 assault on the Capitol
> from criminal liability.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021). This Court has previously

endorsed a similar approach. *See, e.g.*, *United States v. Kenneth Thomas*, 21-cr-552-DLF, Minute

Orders on 3/21/23 and 5/8/23.

The same reasoning applies to any argument based on acts or omissions of the Capitol Police

or other law enforcement: "the logic in *Chrestman* that a U.S. President cannot unilaterally abrogate

statutory law applies with equal force to government actors in less powerful offices, such as law

enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States

v. Williams*, No. 21-cr-377-BAH, at *2 (D.D.C. June 8, 2022). Even if the defendant could establish

that a member of law enforcement told her that it was lawful to enter the Capitol building or allowed

her to do so, the defendant's reliance on any such statement would not be reasonable in light of the

"obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F. Supp. 3d at 32.

In addition to prohibiting any defense arguments that law enforcement actively communicated to the defendant that entering the Capitol building or grounds was lawful, the Court should also bar the defendant from arguing that any failure to act by law enforcement rendered her conduct legal. The same reasoning that applied in *Chrestman* again applies here. That is, like the Chief Executive, a Metropolitan Police Officer or Capitol Police Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her purported inaction. *Chrestman*, 525 F. Supp. 3d at 33. An officer cannot shield an individual from liability for an illegal act by failing to enforce the law or ratify unlawful conduct by failing to prevent it. In other words, "[s]ettled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." *Williams*, No. 21-cr-377-BAH, at *3.

Defendants in other, unrelated January 6 cases have introduced arguments that the defendants' actions were encouraged by agents of the government. Absent such a proffer of evidence, the defendant should be precluded from making any such arguments, whether during an address or on cross-examination, such that the Court may evaluate the relevance of any such line of argument. *Cf. Michelson v. United States*, 335 U.S. 469, 481 (1948) (approving of the trial court's "scrupulous" efforts to guard against the asking of "a groundless question to waft an unwarranted innuendo into the jury box.").

Courts in other January 6 cases have consistently excluded public authority or entrapment-by-estoppel defenses. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 32–33 (D.D.C. 2021); *United States v. Easterday*, No. 22-404 (JEB), 2023 WL 6646384, at *2-3 (D.D.C. Oct. 12, 2023); *United States v. Baez*, No. 21-0507 (PLF), 2023 WL 6364648, at *6-7 (D.D.C. Sept. 29, 2023); *United States v. Bru*, No. 21-352 (JEB), 2023 WL 4174293, at *2 (D.D.C. June 26, 2023); *United States v. Eicher*,

No. 22-38 (BAH), 2023 WL 3619417, at *4-8 (D.D.C. May 23, 2023) *United States v. Carpenter*, No. 21-305 (JEB), 2023 WL 1860978, at *3 (D.D.C. Feb. 9, 2023); *United States v. Sheppard*, No. 21-203 (JDB), 2022 WL 17978837, at *7-9 (D.D.C. Dec. 28, 2022); *United States v. Grider*, No. 21-0022 (CKK), 2022 WL 3030974, at *3 (D.D.C. Aug. 1, 2022). The Court should do the same here. The defendant cannot point to any statements or actions addressing the legality of her actions on January 6. Nor was the defendant's reliance on any such statements or actions "objectively reasonable" given that she entered the Capitol with a mob of rioters intent on disrupting government business.

## CONCLUSION

For the foregoing reasons, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Eric Boylan*
Eric Boylan
Assistant U.S. Attorney
Texas Bar No. 24105519
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, DC 20530
Phone: (202) 252-7215
Email: Eric.Boylan@usdoj.gov

Jake E. Struebing
Assistant U.S. Attorney
D.C. Bar No. 1673292
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, DC 20530

Phone: (202) 252-6931
Email: Jake.Struebing@usdoj.gov