IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :    Case No.: 1:23-cr-00341-RBW-1 |
| | : |
| ANNA LICHNOWSKI | : |
| | : |
| Defendant. | : |

### DEFENDANT ANNA LICHNOWSKI'S MOTION TO DISMISS

Anna Lichnowski, defendant, pursuant to F.R.Cr.P. 12 (b)(3), moves to dismiss Counts One and Two of the Information upon the following grounds:

### INTRODUCTION

Rule 7 of the Federal Rules of Criminal Procedure provides that "the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1).  This rule performs three constitutionally required functions: (1) fulfilling the Sixth Amendment right to be informed of the nature and cause of the accusation; (2) preventing a person from being subject to double jeopardy, as required by the Fifth Amendment; and (3) protecting against prosecution for crimes based on evidence not presented to the grand jury, as required by the Fifth Amendment.  *See*, *e.g.*, *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

Rule 12 provides that a defendant may move to dismiss the pleadings on the basis of a "defect in the indictment or information," including a "lack of specificity" and a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii),(v).  In the Supreme Court's last decision to address the standard, it held that an indictment must "fairly inform[] a defendant of the charge against which he must defend" and "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general

1

description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974). Before trial, a defendant in a criminal case may move to dismiss an information for failure to state an offense and/or lack of specificity. F.R.Cr.P. 12(b)(3)**(**B)(iii) & (v).

Counts One charges an offense under 18 U.S.C. § 1752 (a)(1) and Count Two charges an offense under subparagraph (a)(2) of that section. Count One alleges that on January 6th the defendant "knowingly enter[ed] and remain[ed] in a restricted building and grounds, that is, any posted, cordoned-off and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting without lawful authority to do so." Count Two alleges that the defendant knowingly engaged in "disorderly and disruptive conduct in and within such proximity to, a restricted building or grounds."

## ARGUMENT

I.     **Counts One and Two Fails to State an Offense and Lack Specificity.**

**Posted, Cordoned-Off or Otherwise Restricted Areas Are Not Specified.**

Under § 1752(c)(1)(B), a "restricted building or grounds" is defined as "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." § 1752(c)(1)(b). Counts One and Two fail to state offenses because they do not inform the defendant of the specific facts and circumstances under the general category of a *posted*, *cordoned-off* or *otherwise restricted area* of a restricted building or grounds. The statute's plain text requires some type of clear on-site public notice setting off the public space. This follows from the ordinary meaning of "posted" and "cordoned-off." "Posted" means "to forbid (property) to trespassers under penalty of legal prosecution by notices placed around the boundaries." *Webster's Third New International Dictionary* 1771 (1966). "Cordon" referred to "a line or circle of persons or objects around any

person or place," while "cordon off" meant "form a protective or restrictive cordon around (an area) – for example, "a cordon of police kept back the crowd," or "[they] were not allowed in the front yard, which was cordoned off by the police." *Id*., at 506.

The statute's mandate that any off-limits area be publicly identified reflects Congress's desire to balance "greater protection for the President with any 'chilling effect' on lawful dissent" by ensuring that "the limits of that dissent be clearly drawn." S.Rep. No. 91-1252, 91st Cong., 2d Sess. 7 (1970). Constitutional overbreadth and vagueness concerns were especially acute, in Congress's view, "in cases where the President may be temporarily visiting an area" that is otherwise public. *Id*., at 7. Consequently, Congress expected the Secret Service to "make every effort … to make such restricted areas known to the public (i.e., by posting or cordoning off)" – a requirement under the statute that stands independent of the element[] of the crime [to] knowing[ly] … violate [] the restricted area." Id. at 8.

According to the complaint filed by Special Agent Tyler Gelsleichter, at 2:47 p.m., Lichnowski went inside the Capitol building at the Senate Wing door, located on the west side of the building, "which had been broken open by other rioters at 2:13 p.m." (ECF#1). But the information does not describe any posted, cordoned off or other demarcated areas that set off areas from the public.  A video recording of the interior at the Senate Wing door shows many police officers standing around as the defendant entered through that door.  The defendant did not go through a line of officers on the north side of the lobby into which she entered from the Senate Wing door.  Instead, she followed the group of people who were allowed by the police to walk to the Rotunda.  There were no interior signs indicating restricted areas inside the Capitol. Under these circumstances, it was incumbent upon the government to allege where the boundaries of restricted areas were inside the Capitol and how they were demarcated.

3

As for the grounds of the Capitol, the information fails to describe the area which were posted, cordoned off or otherwise restricted that the defendant entered.  The facts concerning when, where and how the defendant entered are not specified.

Critically, binding precedent establishes that the entire Capitol grounds is a public forum:

> The Capitol Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public; indeed, thousands of people visit them each year. . . . Nor is the primary purpose for which the Capitol was designed – legislating – incompatible with the existence of all parades, assemblages, or processions which may take place on the grounds.

*Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575,584 (D.D.C.) (three-judge panel), *aff'd*, 409 U.S. 972 (1972)("fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion").  Lichnowski was therefore entitled to presume that, *absent notification otherwise*, she had the right to enter and remain on the Capitol grounds.

**The Information Lacks Specificity in Regard to the Defendant's Knowledge of the Vice President's Presence.**

Under § 1752(c)(1)(B), the government must prove as an essential element of the offense that the defendant *knew* that the Vice President was or would be temporarily visiting the Capitol building or grounds. However, the information fails to allege specific facts that indicated that she had any such knowledge.

In January 6 cases, the government has consistently maintained that a defendant's knowledge of the Vice President's presence in a restricted building or grounds is not an element of the offense.  But many judges in the district do not agree with this position. *See United States v. Samsel*, No. 21-cr-537 (JMC) (D.D.C. Feb. 2, 2024) (Cobb, J.); *United States v. Groseclose*, No. 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023) (Nichols, J.);

*United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.). Those decisions have interpreted the statute correctly, and here's why.

"Knowingly" introduces each element of the offense under § 1752(a)(1) & (2). In *Rehaif v. United States*, 139 S.Ct. 2191, 2196 (2019), the Supreme Court stated that "we 'ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element.'" (*Quoting Flores-Figuera v. United States*, 556 U.S. 646, 650 (2009). For completeness sake, § 1752(a)(1) requires that a person "*knowingly* enter[ed] or remain[ed] in any restricted building or grounds," which in turn is defined as "a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Applied to this definition, "Knowingly" means that one knows that the Vice President is or will be temporarily visiting there. As the Supreme Court has noted, "a defendant generally must 'know the facts that make his conduct fit the definition of the offense." *Elonis v. United States*, 575 U.S. 723, 735 (2015)(quoting *Staples v. United States*, 511 U.S. 600, 608 (1994). It follows that the defendant would have to know that the Vice President was present in the Capitol in order to be found guilty of a § 1752 offense. Congress could have been in session on January 6, but if the Vice President was not there, the area could not be considered a "restricted area" under § 1752.

A defendant's appreciation of the presence of the Vice President in the building is all the more crucial because § 1752 provides for a significantly greater punishment than a simple trespass. § 1752 provides for a maximum punishment of up to one (1) year in prison. The punishment for ordinary trespass carries a six-month prison sentence under D.C. Code, § 22-3302.

The government no doubt will point to the decision in *United States v. Griffin*, 549 F. Supp.3d 49 (D.D.C. 2021) for a decision which supports its view of the statute. Judge Trevor

5

McFadden ruled in that case that "knowingly" *mens rea* did not extend to the restrictive building or grounds element as defined in § 1752(c). The *Griffin* decision is on appeal and was argued in December 2023. *See United States v. Couy Griffin*, Court of Appeals, Case No. 22-3042. But since there are several district court decisions at odds with the *Griffin* decision, the rule of lenity should be applied and the statute construed in the defendant's favor. *United States v. Bass*, 404 U.S. 336, 347 (1971)("'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity'")(quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971).

### The Information Does Not Allege Facts to Demonstrate that the Secret Service Established the Restricted Areas

The Government does not allege that the posted, cordoned-off or otherwise restricted areas were designated for the Vice-President's visit *at the direction of the Secret Service*. Trespassing on certain portions of the grounds of the Capitol is always a crime, but Lichnowski did not violate § 1752 unless Vice-President Pence was "visiting" or "temporarily visiting" the specific area where she traversed and that the Secret Service designated that area as a restricted zone. *Cf. United States v. Bursey*, 416 F.3d 301, 308-09 (4th Cir. 2005) (upholding conviction under § 1752(a)(1) as the defendant had "the requisite intent" to violate the statute as he "understood the restriction to have been created by the Secret Service (as opposed to state or local law enforcement.")). Although § 1752 does not specifically set forth as a required element that the Secret Service erected the temporary "no go" zone on the Capitol grounds, such a requirement is implied in the statute. The Secret Service is authorized by 18 U.S.C. § 3056 to protect high-ranking officials, including the Vice-President. The statute at hand advises that the temporary "restricted buildings and grounds" are for visits by individuals "authorized to [be] protected" by the Secret Service. § 1752(c)(2).

§ 1752(c)'s legislative history and language also confirm that the "posted, cordoned off, or otherwise restricted area[s]" are created by the Secret Service. As originally passed in 1970,

6

the statute, 84 Stat. 1891, authorized the Treasury Department, which included the Secret Service at that time, to prescribe regulations for restricting grounds where the President and other protected leaders would visit.  18 U.S.C. § 1752(d)(2); 84 Stat. 1891.  Accordingly, the Treasury Department implemented numerous regulations, including requirements that the Secret Service designate certain "temporary residences" and "temporary offices" of their protectees and provide "notice to prospective visitors."  31 C.F.R. § 408.2(c).  In 2006, Congress, likely because the Secret Service was reassigned to the Department of Homeland Security, repealed subsection (d) of § 1752, which authorized the Treasury Department to promulgate regulations.  Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 252 (March 9, 2006).  Nonetheless, the clear legislative intent behind § 1752 from the date of its enactment was to provide the Secret Service with authorization to create temporary protected zones to facilitate its role in protecting the President and other protectees.

The Secret Service routinely designates certain areas as restricted areas.  For example, in United States v. Zhang, WM-19-8100 (S.D. Fla. 2019), which was a prosecution of a suspected Chinese spy trespassing at former President's Trump's Mar-a-Lago residence, the affidavit in support of charging a violation of § 1752 emphasized that signs were posted expressly restricting entry and asserting Secret Service jurisdiction as follows:

> **UNITED STATES SECRET SERVICE RESTRICTED AREA**
>
> **This area is under the jurisdiction of the U.S. Secret Service.  You are entering a "Restricted Building or Grounds" as defined in Title 18, United States Code, § 1752.  Persons entering without lawful authority are subject to arrest and prosecution.**

*See also*, Exhibit 1 which shows photographs of the Secret Service sign at Mar-a-Lago.

In sum, the allegations of the complaint do not satisfy the legal requirement that any posted, cordoned off and otherwise restricted areas were established by the Secret Service.

7

**The §1752 Counts Fail to State an Offense Because The Vice President Was Not <u>*Temporarily Visting*</u> <u>the Capitol</u>**

The § 1752 counts fail to state an offense because there are no facts to prove that Vice President Pence was "temporarily visiting" the Capitol on January 6. Rather, as Judge Nichols has observed, the Vice President has a permanent office in the Capitol Building, serves as President of the Senate, and that is the role in which Vice President Pence presided at the Capitol on January 6. U.S. v. Fischer, 21-cr-234-CJN (D.D.C. 2021), 2/28/2022 Tr. 3:15-25. Just as the judge would not "temporarily visit my chambers," the vice president does not "visit" his own office at the Capitol, particularly when he is in his role as President of the Senate, as was the case on January 6. *Id*., at 19.

To determine the legislative intent of a law, courts "always [] begin with the text of the statute." *Am. Fed'n of Gov't Emps. AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . .the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014). Courts "give words [of a statute] their plain, everyday meaning unless Congress employs a 'word of art.'" *United States v. Alford*, D.C. Cir., Jan. 5, 2024 (quoting *F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012).

The words of § 1752(c)(1)(B) define a restricted building and grounds to include "a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." § 1752(c)(1)(B). Here, the only "person protected by the Secret Service" was Vice President Pence. But the Vice President was not "temporarily visiting" the Capitol on January 6 under the plain, everyday meaning of that term. Like all vice presidents, he had a

8

permanent office in the United States Capitol in his capacity as President of the Senate.  U.S. CONST., Art. I, § 3 & Amend. XII.

On January 6, Vice President Pence was working and performing his constitutional duty to preside in the Senate chamber to count electoral certificates.  In his capacity as President of the Senate, he was employed at his office in the Capitol to break at least 12 ties in that chamber of Congress during his term in office.  There are no facts alleged by the government to demonstrate in what conceivable sense the President of the Senate "visits" his own place of employment.

All reported § 1752 cases which involve Secret Service protectees visiting places where they do not work and hold offices.  *E.g.*, *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (president visiting rally at an airport in South Carolina); *United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (president speaking at a rally in a park); *Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d 846 (S.D. Ind. 2005) (defendant charged with 18 U.S.C. § 1752 during vice president's visit to Evansville).  These cases all involve the president and vice president traveling outside of the District of Columbia and "visiting" that area for a "temporary" purpose, consistent with the plain meaning of § 1752(c)(1)(B).

Vice President Pence was not traveling to a speaking event or political rally on January 6.  He was performing a duty of his office in a building where he had a permanent office.  Based on the plain language of § 1752, he was not "temporarily visiting" the Capitol Building.

### II. 18 U.S.C. §1752 is Unconstitutionally Vague Because It Fails to Give Fair Notice of the Conduct it Punishes.

§ 1752 is unconstitutionally vague. The Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty and, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015)(*citing Kolendar v. Lawson*, 461

9

U.S. 352, 357-358 (1983). As the Court in *Johnson*, *id*., noted, "[t]he prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rule of law,' and a statute that flouts it 'violates the first essential of due process.'"

The text of §1752(c) defines a "restricted building or grounds" as follows:

> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area-
>
> > (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
> >
> > (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
> >
> > (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.[1]

Vagueness because apparent when one tries to apply the statute as the government does. Consider the signs that the Government contends were posted around the grounds of the U.S. Capitol. Those signs read:

**AREA CLOSED**
**By order of the United States Capitol Police Board**

No doubt the government contends that this sign is evidence of posted restricted grounds. From this wording, it cannot be determined whether the area covered by this sign is a "restricted building or grounds." Recall that Congress could have been in session, but if the Vice President was not there, the area could not be considered a "restricted area" under § 1752. The sign fails to signify that the area is "restricted" or is one where "the President or other person protected by the Secret Service is or will be temporarily visiting."

---

[1] Subparagraph (1)(A) of § 1752(c) covers the White House or its grounds or the Vice-President's official residence. Subparagraph (1)(C), is "a special event of national significance." This seemingly would apply to the events of January 6th. But a process exists for such a designation, and it was not followed, for unknown reasons.

One could be easily confused because "area closed" signs were used to keep people away from construction going on in that area for the inauguration, which had nothing whatever to do with the Vice President being at the Capitol on January 6th.  See Ex. 2 attached.

The statute's language "otherwise restricted areas" is likewise vague.  The government maintains that it includes bike racks and snow fencing.  They do not provide clearly reliable notice of the areas which are off-limits to the public.  They were easily moved by demonstrators and failed to provide clear boundaries.

In sum, the statute is sufficiently vague that it cannot be applied in this case and violates the due process requirement of fair notice.

### III. Counts Two and Three Fails to State an Offense Because There is No Evidence that Defendant's Conduct Caused A Session of Congress to be Impeded or Disrupted.

Count Two alleges an offense under 18 U.S.C. § 1752(a)(2), which states:

> Whoever knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions.

Count Three alleges an offense under 40 U.S.C. § 5104(e)(2)(D), which states:

> An individual or group of individuals may not willfully and knowingly – engage in disorderly or disruptive conduct, at any place on the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress, or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

The language of § 1752(a)(2) requires proof that the disorderly or disruptive conduct *in fact* impeded or disrupted the conduct of government business or official functions.  This is consistent with a standard of but-for causation, which means "the harm would not have occurred

11

in the absence of – that is, but for – the defendant's conduct." *Burrage v. United States*, 571 U.S. 204, 211 (2014). Under the standard of causation expressed by § 1752(a)(2), "the harm would not have occurred in the absence of – that is, but for – the defendant's conduct." In other words, to be guilty of the offense, the defendant's conduct must be "an independently sufficient cause" of impeding or disrupting government business or its official functions. *Id*., 215. There is no evidence that the defendant's conduct meets that standard of causation. The events of January 6 would have occurred even in her absence. Lichnowski's actions were clearly insufficient to cause a disruption or impede the orderly conduct of government business or official functions that day. As such, Count Two fails to state an offense.

Count Three also punishes conduct that is disorderly or disruptive. This means conduct which is disorderly or disruptive such that impedes, disrupts or disturbs the orderly conduct of a session of Congress under § 5104(e)(2)(D). Given that this section uses the same terms, disorderly or disruptive, to describe the *actus reus*, we see no reason that Congress would employ a standard of causation different from the one used in § 1752(a)(2), particularly in a First Amendment setting. For the same reasons, Count Three fails to state an offense.

<pre>
                                        /s/ Terrell N. Roberts, III
                                        Terrell N. Roberts, III
                                        Bar ID No. 965061
                                        Attorney for Defendant
                                        6801 Kenilworth Avenue, Suite 202
                                        Riverdale, Maryland 20737
                                        (301) 699-0764
                                        (301 699-8706 Fax
                                        TRoberts@robertsandwood.com

                                        /s Augustus Invictus
                                        Augustus Invictus, Esq.
                                        424 E Central Blvd. # 731
                                        Orlando, FL 32801-1923
                                        Phone: (407) 625-5636
                                        invictuspa@protonmail.com
</pre>

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the foregoing Defendant's Motion to Dismiss was electronically filed on May 28, 2024, via the CM/ECF File & Serve system, and an electronic copy was e-served on:

Eric. W. Boylan
Jake E. Struebing
Assistant U.S. Attorneys
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20053
Eric.Boylan@usdoj.gov
Jake.Struebing@usdoj.gov

   /s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III